IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MATTHEW LEFANDE,                       )
                                        )
    Plaintiff,                          )
                                        )
v.                                      )      Civil Action No. 1:25-cv-54 (RDA/WEF)
                                        )
JONA MIKELL BLOCKER, *et al.*,          )
                                        )
    Defendants.                         )

## MEMORANDUM OPINION AND ORDER

    This matter comes before the Court on Defendant Floyd Allen's Motion to Dismiss (Dkt. 3) and Defendant Jona Blocker's Motion to Dismiss (Dkt. 13) (collectively, the "Motions"). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is fully briefed and ripe for disposition. Considering the Complaint (Dkt. 1), the Defendants' Memoranda in Support (Dks. 4, 14), and Plaintiff's Oppositions (Dkts. 7, 19),[1] this Court GRANTS-IN-PART and DENIES-IN-PART the Motions for the reasons that follow.

### I. BACKGROUND

#### A. Factual Background[2]

    *Pro se* Plaintiff Matthew LeFande is the founder, Training Director, Secretary and Treasurer of the Commonwealth Protection Institute (hereinafter referred to as "CPI"), a non-stock corporation registered with the Virginia State Corporation Commission (the "SCC") and an

---

[1] Defendants did not file reply briefs in support of the Motions.

[2] For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Internal Revenue Code Section 501(c)(3) Training School regulated by the Virginia Department of Criminal Justice Services. Dkt. 1 ¶ 11. LeFande formed CPI in 2005 and appointed two other persons and himself to the Board of Directors. *Id.* ¶ 12. Upon LeFande's motion to CPI's Board of Directors, Defendant Floyd Allen was appointed as CPI's Executive Officer in 2005. *Id.* ¶ 13. Such appointment allowed Allen to act on behalf of CPI, but only at the direction of the Board of Directors. *Id.* At that time, LeFande was appointed Secretary and Treasurer to CPI upon a unanimous vote of the CPI Board of Directors. *Id.* ¶ 14. As Secretary and Treasurer, LeFande was delegated complete authority and control over the books and accounts of the organization. *Id.* Plaintiff retains such authority to the present day. *Id.*

CPI holds an ATF Federal Firearms License (hereinafter referred to as a "FFL"). *Id.* ¶ 15. CPI is a Special Occupational Taxpayer, authorized by the ATF to manufacture firearms regulated by the National Firearms Act of 1934, Internal Revenue Code, Chapter 53 (hereinafter referred to as "NFA"). *Id.* ¶ 16. As a FFL licensee and a Special Occupational Taxpayer, CPI, by and through LeFande as its designated "Responsible Person," is responsible for accounting for and safeguarding all firearms in its possession and for maintaining a written record of the origin and disposition of any firearm it receives or manufactures. *Id.* ¶ 17. Each transaction conducted by CPI involving NFA firearms requires either formal written notice to, or the permission of, the ATF to conduct each transaction such that the ATF can maintain its record of all NFA firearms (known as the NFA Registry). *Id.* ¶ 18. LeFande has been the sole signatory to every transaction of CPI with ATF since the organization's inception in 2005. *Id.* ¶ 20.

The eForms system is an internet portal maintained by the ATF which is used by Special Occupational Taxpayers to conduct transactions and notices required by the NFA. *Id.* ¶ 21. Use of the eForms system requires the registration of individual users who then affiliate themselves in

the system with their respective FFL entities. *Id.* ¶ 22. Access to the portal requires the use of a username and password unique to each individual user. *Id.* The eForms login page warns that the unauthorized or improper use of the portal may result in civil or criminal penalties. *Id.* ¶ 23. LeFande registered with eForms and began using the current version of the portal in March 2022, affiliating himself with CPI as its "Responsible Person." *Id.* ¶ 24.

In mid-2022, Defendant Vladimir Torbenko began appearing at gun show events in Virginia that LeFande attended with Defendant Jona Blocker. *Id.* ¶ 25. Torbenko appeared to make significant and ongoing efforts to befriend various United States government employees and contractors who attended the event. *Id.* Upon learning of Blocker's government contracting and consulting activities, Torbenko would regularly visit Blocker, first at the gun show events and then at her home in Woodbridge, Virginia, where LeFande lived with Blocker and where Blocker worked from home as a government consultant. *Id.* ¶ 26. Torbenko provided Blocker with dining experiences, expensive gifts and seemingly endless offers of assistance with her business activities. *Id.*

In August of 2023, Torbenko began giving LeFande thousands of dollars' worth of gifts in the form of machine gun parts and Soviet military paraphernalia. *Id.* ¶ 27. LeFande, who has training and experience in counter-intelligence matters, became increasingly suspicious of Torbenko's intentions. *Id.* ¶ 28. LeFande suspected Torbenko was acting as a foreign agent and that his conduct with Blocker was a security risk. *Id.* On September 7, 2023, LeFande demanded that Torbenko take back his belongings from Blocker's home, where both she and LeFande lived, including a Russian-made AK74-type rifle and not speak to him further. *Id.* Blocker became enraged with LeFande for dismissing Torbenko. *Id.* Following the dismissal of Torbenko, Blocker

continuously argued with LeFande regarding LeFande's administration of CPI. *Id.* ¶ 29. On September 10, 2023, LeFande canceled a CPI event which Blocker had previously requested. *Id.*

On September 22, 2023, LeFande reported to the Prince William County Police that, on or about September 14, 2023, he had been assaulted by Blocker. *Id.* ¶ 30. On September 25, 2023, LeFande appeared before the Juvenile and Domestic Relations Court of Prince William County. *Id.* ¶ 31. On that date, the court issued a Preliminary Protective Order against Blocker. *Id.* On September 29, 2023, Blocker caused to be served upon LeFande a Notice Forbidding Trespass for the registered place of business for CPI. *Id.* ¶ 32. Blocker had no business relationship or control over this property. *Id.*

By mid-October 2023, Torbenko was frequenting Blocker's home in Woodbridge and later appeared regularly at gun show events with her. *Id.* ¶ 33. Plaintiff alleges, upon information and belief, that Torbenko was at this time counseling and aiding Blocker on means to retaliate against LeFande for the protective order and to take control over CPI. *Id.* ¶ 34. Torbenko was observed by multiple people on more than one occasion seeking out associates of LeFande at gun show events and insisting that they speak to Blocker about LeFande. *Id.* By mid-October, Blocker had seized all of LeFande's personal property, and a substantial amount of property belonging to CPI, located at Blocker's residence, where both had previously resided, in Woodbridge. *Id.* ¶ 35. Blocker demanded that LeFande cease the protective order proceedings, or she would not return the property. *Id.*

On or about November 13, 2023, Blocker placed a series of fraudulent forwarding orders for CPI's mailbox at the Midland Post Office, which Plaintiff alleges was most likely done through the U.S. Postal Service's ("USPS") internet portal. *Id.* ¶ 36. These orders forwarded mail from that mailbox to Blocker's private mailbox service in Woodbridge and included mail addressed to

CPI, its various registered trade names, and a trust maintained for the benefit of CPI controlled by LeFande. *Id.* Blocker had no authority to handle or redirect the mail of CPI and claims to the contrary to the USPS were false. *Id.*

Sometime prior to March 22, 2024, Defendants Allen and Blocker added themselves as "Responsible Persons" to the CPI FFL through applications mailed to ATF through the USPS. *Id.* ¶ 37. Allen and Blocker falsely claimed to ATF to have authority to administer CPI's FFL. *Id.* Plaintiff alleges that such misrepresentations were made in furtherance of an ongoing effort to wrest control of CPI away from LeFande and to retaliate for LeFande's ongoing protective order proceedings. *Id.* Allen was without authority from the CPI Board of Directors to take any act regarding the CPI FFL. *Id.* ¶ 38. Such authority was solely delegated to LeFande by CPI's Board of Directors through his appointment as Secretary and Treasurer. *Id.* Plaintiff alleges that adding Blocker to the CPI FFL was fraudulent and a violation of federal law, as Blocker was not an officer or employee of CPI and is a "disqualified person" under 18 U.S.C. § 922(g), as a user of controlled substances. *Id.* ¶ 39.

Upon Blocker's addition to the CPI FFL and prior to March 22, 2024, she contacted the ATF in Martinsburg, West Virginia, over interstate telephone lines and falsely claimed that she was a Director of CPI and that LeFande was "unavailable" to administer the ATF internet account for CPI. *Id.* ¶ 40. As a result of Blocker's false statements and without any attempt by ATF to verify her claims, LeFande's access to the ATF eForms account for CPI was terminated and he has not been able to restore it. *Id.* ¶ 41. Blocker further sent the ATF a change of address notification through the USPS causing a new FFL certificate for CPI to be mailed by ATF through the USPS to her at a private mailbox service in Woodbridge, Virginia. *Id.* ¶ 42. Plaintiff alleges that possession of the certificate means she can contact a firearms dealer anywhere in the United

States and purchase firearms over the counter or by mail without a background check or completion of the ATF's Firearm's Transaction Record Form 4473. *Id.* ¶ 43. Such unauthorized transactions, if they have occurred, remain completely unknown to LeFande, and Plaintiff alleges would likely be unknown to the ATF as well. *Id.* As a direct result of LeFande's access to the ATF account being revoked, LeFande has been unable to conduct transactions on the account, provide a complete accounting for the inventory of CPI's ATF regulated firearms, or conduct other statutorily required functions for regulatory compliance. *Id.* ¶ 44. Plaintiff alleges that such non-compliance immediately placed LeFande in potential legal jeopardy with the ATF, and necessarily jeopardized CPI's licenses with the ATF. *Id.*

In March 2024, LeFande began notifying administrators of the eForms portal and employees of the ATF NFA Branch that Blocker had fraudulently gained access to CPI's eForms account and was now unlawfully accessing transaction data and taxpayer information to the exclusion of LeFande and potentially conducting unauthorized firearms transactions. *Id.* ¶ 45. Plaintiff alleges that the ATF personnel did not terminate Blocker's access to the system, and she retains access as of the filing of the Complaint. *Id.* ¶ 46.

Sometime prior to July 2024, Blocker obtained a copy of CPI's 2024-2025 Special Occupational Tax certificate, mailed from the ATF through the USPS to her private mailbox service in Woodbridge. *Id.* ¶ 47. On August 21, 2024, and again on August 22, 2024, Blocker and Allen filed an amended Annual Report with the SCC for CPI. *Id.* ¶ 48. Blocker made this filing through the SCC's internet portal. *Id.* The report changed the address of the statutory registered agent for the corporation to Blocker's private mailbox service in Woodbridge. *Id.* Plaintiff asserts that Blocker and Allen were without authority to make any change to the address

of the registered agent. *Id.* ¶ 49. Plaintiff further asserts that he had been the sole authorized registered agent of CPI since its inception in 2005. *Id.*

On September 12, 2024, Blocker emailed the Virginia Department of Criminal Justice Services from an email alias named for the fictitious Midland Residents Community Action Group, community_action_12@protonmail.com, and falsely claimed that CPI was operating without zoning authority at its training center in Midland, Virginia. *Id.* ¶ 51. Blocker further claimed that CPI's insurance provider was operating without lawful authority in Virginia. *Id.* Blocker attached many of the same documents regarding LeFande that she had previously been seen distributing at gun shows in the company of Torbenko. *Id.* Plaintiff alleges, upon information and belief, that Blocker at this time made the same claims to CPI's insurance agent in Portsmouth, Virginia, and the insurance provider located in Southfield, Michigan. *Id.* ¶ 52. As a result of Blocker's claims, CPI's liability insurance was not renewed shortly thereafter without notice or explanation. *Id.* ¶ 53. Replacement insurance was obtained after a short lapse in coverage, but at approximately twice the premium cost. *Id.*

On October 7, 2024, Blocker, using an internet email account she created entitled "CPI-FFL Responsible Person" and the address CPI-FFL@protonmail.com, wrote to the Virginia Department of General Services and demanded that LeFande be removed as a screener for CPI's participation in the Federal Surplus Property program. *Id.* ¶ 54. She further attempted to enroll herself as a screener. *Id.*

On or about October 11, 2024, Blocker again made a series of forwarding orders through the internet portal of the USPS. *Id.* ¶ 55. Blocker again requested that mail addressed to CPI and LeFande in Midland, Virginia, be redirected to her private mailbox service in Woodbridge, Virginia. *Id.* On October 16, 2024, LeFande received multiple notices mailed to him at Midland

via the USPS notifying him of the forwarding orders. *Id.* ¶ 56. LeFande then discovered the fraudulent SCC filings online, and, on October 30, 2024, filed amended filings to correct the address back to Midland, Virginia. *Id.* ¶ 57. On November 14, 2024, Blocker again filed an amendment to CPI's Annual Report through the SCC internet portal, again changing the Registered Agent's address back to her private mailbox service in Woodbridge. *Id.* ¶ 58. By late 2024, Blocker was falsely reporting on social media to numerous potential customers of CPI and LeFande that LeFande had "lost" CPI's Special Occupational Taxpayer status and warning them to not do business with him. *Id.* ¶ 59.

On or about November 1, 2024, Blocker received an NFA tax stamp mailed by ATF through the USPS for an ATF Form 1 approval submitted by LeFande on July 30, 2024, on behalf of CPI. *Id.* ¶ 60. Plaintiff alleges that, as a result, he is now in apparent violation of the NFA recordkeeping requirements by not being able to maintain this certificate and stamp in his records as otherwise required by 28 U.S.C. § 5841(e). *Id.* ¶ 61.

Sometime prior to November 25, 2024, Blocker contacted the administrators of the internet website gunbroker.com in Kennesaw, Georgia, through email and falsely claimed to represent CPI. *Id.* ¶ 62. Blocker falsely claimed that LeFande was not permitted to sell products on its website. *Id.* Those administrators suspended CPI's account with the website and CPI lost numerous internet sales as a result. *Id.*

On January 19, 2025, the Virginia Department of Criminal Justice Services announced its intention to fine CPI for the 2024 lapse in insurance coverage. *Id.* ¶ 63. A copy of the September 12, 2024 email from Blocker was attached to the report. *Id.*

B.   Procedural Background

On January 13, 2025, Plaintiff filed a Complaint alleging that Defendants Blocker, Torbenko, and Allen devised a scheme to unlawfully take control of CPI for their own benefit, asserting one count under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. § 1962(b) and (c).  Dkt. 1 ¶¶ 91-96.  On February 5, 2025, Defendant Allen filed his Motion to Dismiss and supporting memorandum.  Dkts. 3, 4.  On February 6, 2025, this Court issued a *Roseboro* notice to Plaintiff.  Dkt. 6.  On February 18, 2025, Plaintiff filed his Opposition.  Dkt. 7.  On March 14, 2025, Defendant Blocker filed her Motion to Dismiss and supporting memorandum.  Dkts. 13, 14.  On March 17, 2025, this Court issued a *Roseboro* notice to Plaintiff.  Dkt. 17.  On April 11, 2025, Plaintiff filed his Opposition.  Dkt. 19.  Neither Defendant Allen nor Defendant Blocker filed a Reply.

On February 26, 2025, Plaintiff attempted to file an affidavit of service of summons on Defendant Torbenko.  Dkt. 11.  On February 28, 2025, U.S. Magistrate Judge William E. Fitzpatrick quashed service as to Defendant Torbenko as ineffective.  Dkt. 11.  Judge Fitzpatrick further permitted Plaintiff to attempt to re-serve Defendant Torbenko on or before April 13, 2025 and specifically advised Plaintiff that Federal Rule of Civil Procedure 4(m) requires that a defendant be served within 90 days of the filing of the Complaint.  *Id.* at 3 & n. 2.  Plaintiff objected to that Order.  Dkt. 21.  This District Judge overruled Plaintiff's objections, set a deadline in which Plaintiff had to serve Defendant Torbenko, and advised Plaintiff that "the failure to effect service properly on Torbenko within the appropriate time may result in the dismissal of the action as to Torbenko for failure to serve."  Dkt. 22 at 4-5.  To date, there has been no indication that Defendant Torbenko has been served.

## II.  LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'"  *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## III.  ANALYSIS

In his Complaint, Plaintiff asserts that Defendants have violated the federal RICO statute, specifically 18 U.S.C. §§ 1962(b) and (c).  Dkt. 1 ¶¶ 91-96.  Section 1962(b) makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(b).  Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  The RICO statute defines "racketeering activity" to include, among other things, any act indictable under specified federal statutes, including 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).  18 U.S.C. § 1961(1).  Such acts are called "predicate acts."  Here, to support his RICO claim, Plaintiff asserts six predicate acts—two acts of alleged mail fraud and four acts of alleged wire fraud.

In the Motions, Defendants argue that Plaintiff's RICO claim should be dismissed because: (1) Plaintiff has failed to allege RICO standing; (2) Plaintiff has not adequately alleged the existence of an enterprise; (3) Plaintiff fails to adequately allege the existence of the mail and wire fraud predicate acts; and (4) Plaintiff has failed to demonstrate a "pattern" of racketeering activity.[3] After analyzing the Complaint and briefing, the Court will GRANT-IN-PART and DENY-IN-PART the Motions.

## A.  RICO Standing

RICO's private right of action is contained in 18 U.S.C. § 1964(c), which provides in relevant part that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."  The "by reason of" language in 18 U.S.C. § 1964(c) "creates certain 'standing' requirements before one can attempt to state a claim under 18 U.S.C. § 1962."  *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 444 (E.D. Va. 2006) (citing *Brandenburg v. Seidel*, 859 F.2d 1179, 1188 n.10 (4th Cir. 1988)).

---

[3] Defendants also assert generally that Plaintiff's allegations fail to support a RICO claim. The Court addresses these general arguments through the more specific arguments.

Defendants make two arguments that Plaintiff lacks standing here.  First, Defendants argue that Plaintiff has not alleged that he detrimentally relied on any of the Defendants' actions.  It was previously the rule in the Fourth Circuit that, to establish RICO standing, "(1) the plaintiff must have detrimentally relied on the predicate acts of racketeering activity; (2) the predicate acts must be the proximate cause of the injury to the plaintiff; and (3) the plaintiff must suffer actual injury." *Id.* (citing *Brandenburg*, 859 F.2d at 1188 n.10).  The Supreme Court subsequently held, however, that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations."  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008); *see Neder v. United States*, 527 U.S. 1, 24-25 (1999) ("The common-law requirements of 'justifiable reliance' and 'damages' . . . have no place in the federal fraud statutes.").  In so holding, the Supreme Court posed the following apt hypothetical: "[S]uppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers, but not to the rivals themselves.  If the rival businesses lose money as a result of the misrepresentations, it would certainly seem that they were injured in their business 'by reason of' a pattern of mail fraud, even though they never received, and therefore never relied on, the fraudulent mailings."  *Bridge*, 552 U.S. at 649-50.   Accordingly, judges in this District have recognized that the Supreme Court overruled any requirement for a plaintiff to establish that he detrimentally relied on a defendant's actions for RICO claims premised on mail and wire fraud. *See Oriole Grp., LLC v. Pool Scouts Franchising, LLC*, 2025 WL 1983455, at *15 n.21 (E.D. Va. July 17, 2025) ("Before *Bridge*, the Fourth Circuit said that 'where fraud is alleged as a proximate cause of the injury, . . . the plaintiff must have justifiably relied, to his detriment, on the defendant's material misrepresentation.'  *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 (4th Cir. 1996).

As best this Court can tell, *Bridge* overrules that statement."); *see also id.* *15 ("[A] RICO claim premised on wire fraud does not require proof that any victim relied on the alleged misrepresentations."). Accordingly, Defendants' argument that Plaintiff lacks standing because he failed to allege that he relied on any of the Defendants' actions is not well-taken.

Defendants also argue that Plaintiff lacks standing because he has failed to quantify the monetary damages that he is seeking. It is true that a private RICO plaintiff must show damage to "business or property" proximately caused by the defendant's RICO violation to have standing to bring suit. *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 264 (4th Cir. 2001). However, "this Circuit has not held that quantifiable damages are a necessary precondition to RICO liability; instead, this Circuit has formulated the requirement in terms of the necessity of proving *some* damages, not a specific amount." *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001); *see also id.* ("The best reading of § 1964(c)'s injury to business or property requirement is that it refers to the fact of injury and not the amount."). Accordingly, Defendants' challenge based on Plaintiff's failure to plead a specific amount of damage is also not well taken.[4]

---

[4] In their Motions, Defendants also state, without citation or analysis, that Plaintiff does not allege any specific, actual damage to his business or property. *See* Dkt. 4 at 11 ("The Plaintiff has failed to demonstrate any monetary damages that he has suffered. . . . [T]he Plaintiff has not sufficiently pled an actual injury or damages that he has suffered."); Dkt. 14 at 4 ("LeFande does not allege any specific damage to property."). Plaintiff's arguments in his Opposition regarding "tens of thousands of dollars [that] have already been . . . expended in the last year to reproduce . . . equipment," Dkt. 19 at 19, may not be considered as it is "axiomatic that a complaint may not be amended by briefs in opposition to a motion to dismiss." *Sansone v. U.S. Patent & Trademark Off.*, 2025 WL 696527, at *4 (E.D. Va. Mar. 4, 2025). However, Defendants do not address why Plaintiff's allegations regarding, for example, his inability to conduct transactions," Dkt. 1 ¶ 44, or demand for "loss of revenue," *id.* at 17, are insufficient. *See Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025) ("For example, if the owner of a gas station is beaten in a robbery, he cannot recover for his pain and suffering. But if his injuries force him to shut his doors, he can recover for the loss of his business."). The Court thus finds this argument inadequately presented.

Defendants' argument that Plaintiff may not seek injunctive relief, however, is well taken. "Section 1964 does not authorize private RICO plaintiffs to sue for prospective injunctive relief." *Hengle v. Treppa*, 19 F.4th 324, 356 (4th Cir. 2021). Accordingly, Plaintiff's claims for such injunctive relief will be dismissed.

### B. Enterprise

Defendants also argue that Plaintiff failed to adequately allege the existence of a RICO enterprise. For RICO purposes, an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). As the Fourth Circuit has recently emphasized, "[t]his enumeration of included enterprises is obviously broad, encompassing '*any* . . . group of individuals associated in fact.'" *Amazon.com, Inc. v. WDC Holdings LLC*, 2025 WL 2647149, at *4 (4th Cir. Sept. 16, 2025) (emphasis original) (quoting *Boyle v. United States*, 556 U.S. 938, 944 (2009)); *see also Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 257 ("RICO broadly defines 'enterprise.'"). "[T]he very concept of an association in fact is expansive, and [t]he term any ensures that the definition has a wide reach." *Amazon.com, Inc.*, 2025 WL 2647149, at *5 (quoting *Boyle*, 556 U.S. at 944) (internal quotation marks omitted). Accordingly, "[t]he Supreme Court has cautioned . . . against reading the term enterprise too narrowly." *Id.* (quoting *United States v. Palacios*, 677 F.3d 234, 249 (4th Cir. 2012)) (internal quotation marks omitted). "Instead, the [Supreme] Court has explained that a RICO enterprise includes 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "Such an enterprise 'is proved by evidence of an ongoing

---

However, because standing is a jurisdictional issue, the Court will order supplemental briefing on the issue as it must independently assure itself of jurisdiction at all stages of litigation.

14

organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Id.* (quoting *Turkette*, 452 U.S. at 583). "In particular, the Supreme Court has instructed that 'an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Id.* (quoting *Boyle*, 556 U.S. at 946).

In this case, Defendants specifically argue (without further elaboration or case citations) that Plaintiff does not sufficiently (1) identify an enterprise that has been engaged in, or which has activities affecting, interstate or foreign commerce, (2) allege how Defendants are employed by or associated with such an enterprise, or (3) allege how Defendants conducted or participated in the affairs of an enterprise. Plaintiff responds that CPI qualifies as an enterprise for RICO purposes, noting that CPI is alleged to be a corporation which the Defendants have commandeered through the alleged predicate acts of mail and wire fraud.

The Court finds that Plaintiff has plausibly alleged the existence of an enterprise in this case. Plaintiff specifically alleges that CPI is a non-stock corporation registered with the SCC and a Section 501(c)(3) Training School regulated by the Virginia Department of Criminal Justice Services. Dkt. 1 ¶ 11. Plaintiff also alleges that CPI is a Special Occupational Taxpayer, authorized by the ATF to manufacture firearms regulated by the National Firearms Act of 1934. *Id.* ¶ 16. Accordingly, CPI is sufficiently alleged to be an enterprise engaged in, or with activities affecting, interstate or foreign commerce. Moreover, Plaintiff alleges that Defendant Floyd Allen was appointed as CPI's Executive Officer in 2005, *id.* ¶ 13, and that Defendant Blocker repeatedly associated herself with CPI, *see, e.g.*, *id.* ¶ 37 ("Sometime prior to March 22, 2024, Defendants Allen and Blocker added themselves as 'Responsible Persons' to the CPI FFL through applications mailed to ATF through the United States Postal Service."). And Plaintiff alleges several instances

of Defendants participating in CPI's affairs. *See, e.g.*, *id.* ¶ 48 ("On August 21, 2024, and again on August 22, 2024, Blocker and Allen filed an amended Annual Report with the Virginia State Corporation Commission ('SCC') for CPI. . . . The report changed the address of the statutory registered agent for the corporation to Blocker's private mailbox service in Woodbridge."). Accordingly, Defendants arguments as to the allegations of an enterprise are not well taken.[5]

### C. Predicate Acts

As the Court noted *supra*, Plaintiff asserts six predicate acts—two acts of alleged mail fraud and four acts of alleged wire fraud to support his RICO claim. "In order to prove mail fraud, the Government must prove that the defendant (1) knowingly participated in a scheme to defraud and (2) mailed, or caused to be mailed, anything 'for the purpose of executing such scheme.'" *United States v. Pierce*, 409 F.3d 228, 232 (4th Cir. 2005) (quoting 18 U.S.C. § 1341). "The essential elements of a wire fraud offense are '(1) the existence of a scheme to defraud and (2) the use of . . . a wire communication in furtherance of the scheme.'" *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012), *as amended* (Mar. 29, 2012) (quoting *United States v. Curry,* 461 F.3d 452, 457 (4th Cir. 2006). Here, in brief, Plaintiff alleges that:

- Mail Fraud I: Defendants changed the address of CPI by making false forwarding orders, making false annual reports, and making false change of address request forms, causing at least one NFA tax stamp, a copy of CPI's FFL, and a copy of CPI's Special Occupational Tax certificate to Defendant Blocker's home address. Dkt. 1 ¶¶ 64-73; *see also, e.g.*, *id.* ¶ 36 ("On or about November 13, 2023, Blocker placed a series of fraudulent forwarding orders for CPI's mailbox at the Midland Post Office, most likely through the U.S. Postal Service's internet portal. These orders forwarded mail from that mailbox to Blocker's private mailbox service in Woodbridge and included mail addressed to CPI, its various registered trade names and a trust maintained for the benefit of CPI controlled by LeFande. Blocker had no authority whatsoever to handle or redirect the mail of CPI and claims to the contrary to the Postal Service at the time of the forwarding orders was false.").

---

[5] As Defendant Torbenko has not yet appeared in this action nor filed any motion, the Court need not address the sufficiency of any allegations as to him at this stage.

- Mail Fraud II: Defendants mailed a series of false applications to ATF to make Defendants Blocker and Allen "Responsible Persons" for CPI. *Id.* ¶¶ 74-77; *see also id.* ¶¶ 37-39 ("Sometime prior to March 22, 2024, Defendant Allen acted with Blocker to add themselves as 'Responsible Persons' to the CPI FFL through applications mailed to ATF through the United States Postal Service. Allen and Blocker falsely claimed to ATF to have authority to administer CPI's FFL. Such misrepresentations were made in furtherance of an ongoing effort to wrest control of CPI away from LeFande and to retaliate for LeFande's ongoing protective order proceedings. Allen was without authority from the CPI Board of Directors to take any act regarding the CPI FFL. Such authority was solely delegated to LeFande by CPI's Board of Directors *ex officio* his appointment as Secretary and Treasurer. Adding Blocker to the CPI FFL was fraudulent and a violation of federal law, as Blocker was not an officer or employee of CPI and is a 'disqualified person' under 18 U.S.C. § 922(g), a user of controlled substances, as defined in section 102 of the Controlled Substances Act . . . .").

- Wire Fraud I: Defendant Blocker "used the internet portal of the United States Postal Service to fraudulently order the redirection of CPI's mail to her private mailbox service in Woodbridge." *Id.* ¶¶ 78-80; *see also id.* ¶ 55 ("On or about October 11, 2024, Blocker again made a series of fraudulent forwarding orders through the internet portal of the United States Postal Service. This time, Blocker named both CPI and LeFande personally for mail addressed to Midland Virginia to be redirected to her private mailbox service in Woodbridge Virginia.").

- Wire Fraud II: Defendant Blocker, "using interstate telephone lines, called the ATF in Martinsburg[,] West Virginia and falsely claimed to be a Director of CPI," even though she "has never been a Director of CPI and has never had any legal authority to act on its behalf," and was thus "able to commandeer CPI's eForms internet account and begin accessing its transaction data and conducting new transactions without lawful authority." *Id.* ¶¶ 81-85; *see also id.* ¶¶ 40-41 ("Upon Blocker's addition to the CPI FFL and prior to March 22, 2024, she contacted the ATF in Martinsburg West Virginia over interstate telephone lines and falsely claimed that she was a Director of CPI and that LeFande was 'unavailable' to administer the ATF internet account for CPI. As a result of Blocker's false statements and without any attempt by ATF to verify her claims, LeFande was removed from his access to the ATF eForms account for CPI and has not been able to restore it.").

- Wire Fraud III: "On October 7, 2024, Blocker attempted to defraud the Virginia Department of General Services by impersonating a member of CPI through a falsely named internet email address alias from her known email service provider. Blocker transmitted her false claims over the internet to a state government employee for the purpose of unlawfully receiving federal government surplus property for herself." *Id.* ¶¶ 86-88; *see also id.* ¶ 54 ("On October 7, 2024, Blocker, falsely impersonating a member of CPI by using an internet email account she created entitled "CPI-FFL Responsible Person" and the address CPI-FFL@ protonmail.com, wrote to the Virginia Department of General Services and

demanded that LeFande be removed as a screener for CPI's participation in the Federal Surplus Property program. She further attempted to enroll herself as a screener.").

- Wire Fraud IV: "Blocker fraudulently claimed to represent CPI in an internet email exchange with administrators of gunbroker.com in Kennesaw Georgia. Such exchange was made in execution of the Defendants' scheme to take control of CPI away from LeFande." *Id.* ¶¶ 89-90; *see also id.* ¶ 62 ("Sometime prior to November 25, 2024, Blocker contacted the administrators of the internet website gunbroker.com in Kennesaw Georgia through internet email and falsely claimed to represent CPI. Blocker falsely claimed that LeFande was not permitted to sell products on its website. Those administrators suspended CPI's account with the website and CPI lost numerous internet sales as a result.").

Defendant Allen argues that Plaintiff's allegations do not constitute mail or wire fraud and are "completely devoid of the necessary information to meet the particularity requirements of Rule 9(b)." Dkt. 4 at 8-9. "Rule 9(b) requires pleading the time, place, and content of the false representations, the person making them, and what that person gained from them." *Scott v. WFS Fin., Inc.*, 2007 WL 190237, at *5 (E.D. Va. Jan. 18, 2007) (citing *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999)). "However, '[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.'" *Id.* Here, Defendants have not identified any specific asserted predicate act as particularly deficient, and the Court finds that Plaintiff has asserted enough particular factual allegations to put Defendants on notice of the circumstances for which they will have to prepare a defense, and has otherwise plausibly alleged the predicate acts. Accordingly, this argument is not well taken.

Defendant Blocker additionally argues that Plaintiff has failed to allege facts to support his claims that Defendants' communications were fraudulent, that Plaintiff "has not provided any factual support that Blocker or Allen were acting without CPI's authority." Dkt. 14 at 7. As noted

*supra*, however, Plaintiff has alleged, for example, that "Allen was without authority from the CPI Board of Directors to take any act regarding the CPI FFL" because "[s]uch authority was solely delegated to LeFande by CPI's Board of Directors *ex officio* his appointment as Secretary and Treasurer," and that "Blocker was not an officer or employee of CPI and is a 'disqualified person' under 18 U.S.C. § 922(g), a user of controlled substances, as defined in section 102 of the Controlled Substances Act . . . ." Dkt. 1 ¶¶ 38-39. Thus, the Court finds that Plaintiff has alleged sufficient facts to support his claim that Defendants' communications were fraudulent, and this argument too is not well taken.

Similarly, Defendant Blocker argues that Plaintiff "fails to articulate how Blocker was conducting CPI's business through mail fraud." Dkt. 14 at 5. But, in the Complaint, Plaintiff specifically alleges, by way of example, that, "[o]n August 21, 2024, and again on August 22, 2024, Blocker and Allen filed an amended Annual Report with the Virginia State Corporation Commission ('SCC') for CPI." Dkt. 1 ¶ 48. Thus, this argument is also not well taken.

### D. Pattern

Finally, Defendants argue that Plaintiff failed to allege a pattern of racketeering activity. "[T]he heart of any RICO complaint is the allegation of a pattern of racketeering." *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154 (1987). "To establish such a pattern, 'a plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002) (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)) (emphasis omitted). "In essence, the pattern requirement has been reduced to a 'continuity plus relationship' test." *Id.* (quoting *H.J. Inc.*, 492 U.S. at 239). "For the predicate acts to be related, they must have 'the same or similar purposes, results, participants, victims, or methods of commission, or

otherwise [be] interrelated by distinguishing characteristics and [not be] isolated events.'" *Id.* at 182 (quoting *H.J. Inc.*, 492 U.S. at 240). "The continuity aspect, in turn, refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241). The Fourth Circuit has repeatedly held that "there is no mechanical formula to assess whether the pattern requirement has been satisfied; it is a commonsensical, fact-specific inquiry." *Id.* at 182; *see also Anderson v. Found. for Advancement, Educ., and Employment of Am. Indians*, 155 F.3d 500, 506 (4th Cir.1998) ("These criteria are not always easily applied and depend on the facts of each particular case."); *Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir.1987) (noting that "no mechanical test can determine the existence of a RICO pattern").

Here, Defendant Allen points to *Williams v. Equity Holding Corp.*, in which that court held that allegations of three acts of mail fraud and one act of wire fraud over the course of a year and directed toward a single purpose were insufficient to establish a pattern of racketeering activity. 498 F. Supp. 2d 831, 843 (E.D. Va. 2007). The *Williams* Court found that the plaintiffs failed to allege "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being," and only alleged "ordinary commercial fraud." *Id.* at 844. Here, however, Plaintiff alleges an ongoing scheme in which multiple government entities are being repeatedly defrauded regarding a highly regulated corporation and the alleged ability to "contact a firearms dealer anywhere in the United States and purchase firearms over the counter or by mail without a background check or completion of ATF's Firearm's Transaction Record Form 4473." Dkt. 1 ¶ 43. Accordingly, the Court finds that *Williams* is distinguishable, and this argument too is not well taken.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

ORDERED that Defendant Floyd Allen's Motion to Dismiss (Dkt. 3) is GRANTED-IN-PART and DENIED-IN-PART.  Defendant Allen's Motion is granted with respect to Plaintiff's claims for injunctive relief and denied in all other respects; and it is

FURTHER ORDERED that Defendant Jona Blocker's Motion to Dismiss (Dkt. 13) is GRANTED-IN-PART and DENIED-IN-PART.  Defendant Blocker's Motion is granted with respect to Plaintiff's claims for injunctive relief and denied in all other respects; and it is

FURTHER ORDERED that, on or before, October 24, 2025, Defendant Allen and Defendant Blocker shall file briefs of no more than TEN (10) PAGES addressing whether Plaintiff has sufficiently alleged his "injury to business or property" to establish his personal standing to assert his RICO claim and whether, under Article III, Plaintiff can maintain standing; and it is

FURTHER ORDERED that Plaintiff shall respond Defendant Allen's and Defendant Blocker's briefs on or before November 7, 2025, in TEN (10) PAGES or less; and it is

FURTHER ORDERED that Defendant Allen and Defendant Blocker shall file reply briefs of no more than FIVE (5) PAGES on or before November 14, 2025; and it is

FURTHER ORDERED that, pursuant to the Court's June 11, 2025 Order, in which the Court ordered that Plaintiff had until July 2, 2025, to properly serve Defendant Torbenko, and in which Plaintiff was warned that failure to effect service properly on Defendant Torbenko within that time could result in the dismissal of the action as to Defendant Torbenko for failure to serve, and noting that Plaintiff has not filed any indication that Defendant Torbenko has been properly served as of the issuance of this Order, Defendant Torbenko is DISMISSED as a defendant from the instant action without prejudice, *see* Fed. R. Civ. P. 4(m).

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
September 30, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge