UNITED STATES DISTRICT COURT
Eastern District of Virginia – Alexandria Division

MATTHEW A. LeFANDE

    Plaintiff,

v.                              1:25-cv-54 (RDA/WEF)

JONA MIKELL BLOCKER, *et al.*

    Defendants.

### RESPONSE TO THE COURT'S INQUIRY AS TO SUFFICIENCY OF SUBJECT MATTER JURISDICTION

The court has inquired as to the sufficiency of subject matter jurisdiction. The court questions the Plaintiff's standing as to the personal damages required under 18 U.S.C. § 1964 (c). "Questions concerning subject-matter jurisdiction may be raised at any time ... *sua sponte* by this court." *Plyler v. Moore,* 129 F.3d 728, 732 n. 6 (4th Cir.1997) (citations omitted). Although neither Defendant identifies their submission as such, the Plaintiff herein analyses the court's inquiry as if it was presented by the Defendants as a Rule 12(b)(1) motion. In support of this analysis, the Plaintiff presents an affidavit speaking to such damages directly incurred by him as direct and proximate result of the Defendants' violation of § 1962. A court has "broad discretion to consider relevant and competent evidence" to resolve factual issues raised by a Rule 12(b)(1) motion. *Finca Santa Elena, Inc. v. U.S. Army Corps of Engineers*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing 5B Charles Wright & Arthur Miller, FED. PRACTICE & PROCEDURE, CIVIL § 1350 (3d Ed. 2004)); see also *Fayetteville Investors v. Commercial Builders*, 936 F.2d

1

1462, 1473 ) (4th Cir. 1991) (explaining that consideration of documents outside of pleadings does not convert a motion to dismiss under Rule 12(b)(1) into a motion for summary judgment).

The Plaintiff will demonstrate at trial that the reckless, malicious and unlawful acts of the Defendants intentionally thwarted the Plaintiff's ability to maintain CPI as a viable corporation. Having invested some twenty years of effort into the corporation, the Plaintiff over the past two years has further expended tens of thousands of dollars of non-CPI funds to purchase replacement equipment and pay bills, while under nearly continuous attack by the Defendants and unable to develop ordinary revenues due to this unlawful interference. These funds are now sunk, as the Plaintiff is a "disqualified person" for the purpose of the Internal Revenue Code, a proposition very different from a "disqualified person" under the ATF regulations, see Compl. ¶ 39, and he cannot simply loan money to the corporation without substantial risk of violating the Code and creating undue conflicts of interest and substantial fines for the appearance of self-dealing. Thus, the Plaintiff has significant unrelieved monetary losses as a direct and proximate result of the Defendants' unlawful acts.

Unlike diversity jurisdiction under 28 U.S.C. § 1332, there is no minimum jurisdictional amount in controversy, and Justice Holmes' adage "more than a peppercorn" in demonstrable damages to the Plaintiff rightfully invokes this court's authority to act upon this cause. See *United States v. DeFries*, 43 F.3d 707, 709 (D.C. Cir. 1995) ("It is difficult to see where the defendants find this *de minimis* exception. The fraud statute speaks only of 'money or property' generally, not of property above a certain value.... Given the absence of any statutory hint of a threshold minimum, it is hardly surprising that several courts have found [the statute] applicable to what at first glance appear to be exceedingly small property interests.")

2

### The Plaintiff's relationship to CPI.

Under the Internal Revenue Code, certain persons associated with a nonprofit corporation are classified as "disqualified persons". 26 U.S.C. § 4958(a)(1). These include the person who founded the organization, a person who is a substantial contributor to the organization; a person who has authority to determine a substantial portion of expenditures; and a person who manages a discrete segment or activity of the organization that represents a substantial portion of assets, income or expenses. *Fumo v. Commissioner*, T.C. Memo. 2021-61 (2021). The Plaintiff meets this definition by nearly any standard. While CPI is not classified as a private foundation, the IRS has indicated that other 501(c)(3) organizations are nonetheless scrutinized for self-dealing by these closely associated persons. In this regard, the Plaintiff has avoided any instance of lending money or borrowing money from CPI to avoid the appearance of any such self-dealing. 26 CFR § 53.4958-3(e) amply demonstrates the fluid nature of the definition of this category and the Plaintiff's concomitant overly cautious behavior to not run afoul of the law.

Prior to 1996, revocation of tax exempt status was the only sanction available to the IRS for organizations that engaged in private inurement. The law and regulations known as "intermediate sanctions" were enacted to provide an "intermediate" option between doing nothing and revocation of tax exempt status. 26 U.S.C. § 4958. This change enables the IRS to impose an excise tax on insiders who improperly benefit from a transaction with a 501(c)(3) public charity. The improper benefit received is referred to as an excess benefit and occurs in situations when a disqualified person transacting with the organization receives greater value than what they provided as a part of a transaction or exchange. *Id.* (c)(1)(A). Disqualified persons who engage in an excess benefit are subject to an initial 25% tax on the excess benefit. *Id.* (a)(1). If the excess benefit isn't corrected promptly enough (by repayment or otherwise

putting the organization back in the same position it was in before the transaction occurred), then an additional 200% penalty applies. *Id.* (b). Organizational managers that knowingly approve an excess benefit are potentially subject to a 10% tax on the benefit. *Id.* (a)(2).

### Damage to the corporation which cannot be remunerated to the Plaintiff

For more than two years, the actions of the Defendants have caused manifold harm to CPI as a corporation. The Plaintiff has been locked out of all types of electronic transaction systems which would permit the purchase and sale of regulated firearms in the ordinary course of business. The Defendants have overtly interfered in multiple specific transactions. While CPI does not focus on sales or manufacturing of firearms as its core business, it does provide occasional and ongoing revenues which supplement other functions such as training. It further facilitates firearms transactions for its membership and its donors.

The Defendant's theft or conversion of a massive amount of machine tools and specialized equipment has directly impacted CPI's ability to prototype equipment and produce specialty products which again supplement the income of the organization and create rare and unusual firearms which readily distinguish CPI's training product. Since October 2023, the Plaintiff has expended tens of thousands of dollars to replace equipment, supplies and parts which otherwise belong to CPI, but inexplicably remains in the possession of the Defendants in an extortionate effort to dissuade prosecution of his claims. Every month, the Plaintiff is forced to personally pay thousands of dollars for utility bills, equipment and supplies which would otherwise be paid from the corporation's current accounts derived from such revenue. The intolerable alternative would be the complete collapse of an organization to which the Plaintiff has devoted twenty years of his life.

**These losses to the Plaintiff demonstrate Constitutional standing.**

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. CONST, art. Ill, § 2. "One element of the case-or-controversy requirement is that plaintiff [ ] must establish that he ha[s] standing to sue." *Clapper v. Amnesty International USA,* 568 U.S. 398 (2013) (internal quotation marks omitted). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Courts have interpreted "injury in fact" to mean an "invasion of a legally protected interest which is (a) concrete and particularized… and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560-61 (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. For an injury to be "concrete," it "must be *de facto*; that is, it must actually exist." *Id.* at 340 (internal quotation marks omitted). "'Concrete' is not, however, necessarily synonymous with 'tangible'… and intangible injuries can nevertheless be concrete." *Id.* In particular, the injury-in-fact requirement is not limited simply to financial or economic losses. *Pender v. Bank of America Corporation,* 788 F.3d 354, 366 (4th Cir. 2015).

This is not a case where the Plaintiff simply alleged "a bare procedural violation… divorced from any concrete harm." *Spokeo,* 578 U.S. at 341. This Plaintiff maintains a claim that is substantial and, in large part, highly quantifiable. There remain further injuries to reputation, and a risk of a sizable loss of the Plaintiff's life's work, but for not inconsequential financial interventions on an ongoing basis, and the prospect of Plaintiff losing a title and

5

position in an organization in a manner which the founding documents do in no way afford the Defendants. Costs incurred to mitigate or avoid harm when a substantial risk of harm actually exists creates standing to sue. *Hutton v. National Board of Examiners in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018) (citing *Clapper*, 568 U.S. at 414 n.5).

### Amendment is the appropriate remediation to any deficiency in pleading.

The court's present posture regarding injunctive relief indeed brings the specter of incomplete relief, and the prospect of ongoing violations and injuries to the Plaintiff absent the court's direct intervention. This leads us astray from the third *Spokeo* test for standing. It is indeed a curious proposition, that this court can punish the Defendants under RICO, yet is somehow infirm in its *inherent authority* to enjoin the ongoing illegal conduct of the Defendants. Indisputably, both the court and this Plaintiff are presently beholden to the Fourth Circuit's ruling, albeit a position apparently not shared by other circuits examining this issue. This dilemma is obviously immediately remedied by the granting of leave to file an amendment to the Complaint, to incorporate common law and state law parallel claims under pendent jurisdiction and mooting the need to later force the injunction issue at the appellate level.

Defendant Blocker's assertion that amendment would be "futile" is offered without the slightest perfunctory argument. Indeed, this court has already identified personal damages recited by this Plaintiff but suggests that amendment would be required to make them operative in the Complaint. This is not consistent with the rules of civil pleading. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'" *Bell Atlantic*

6

*Corp. v. Twombly,* 550 U. S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U. S. 41, 47 (1957)). Rule 8 in no way requires that a plaintiff specify his damages in the Complaint, only the relief sought. The present inquiry transcends this Rule, but in no way does it render the Complaint itself deficient. The Complaint remains valid within the confines of the Rule and separately, the Plaintiff now freely responds to the court's request for identification of personal damages to confirm subject matter jurisdiction. Those damages <u>now</u> identified by the Plaintiff are perhaps "special damages" requiring specific pleading under Rule 9(g).[1] Any such deficiency is immediately corrected simply by now incorporating these allegations into the Complaint.

As previously recited, the Plaintiff herein reasonably believed at the time of filing that § 1964 (a) and (c) would afford him a complete remedy. Given this circuit's unique interpretation of the statute, that now does not appear to be the case. This Plaintiff faces no statute of limitations issue or otherwise obtaining personal jurisdiction over the Defendants again. He would simply be left with refiling the case, paying a fee again and re-serving the Defendants to accomplish what should be done with a first amendment to this Complaint. "We can conceive of no reason for such judicial volleyball." *Calvin Ki Sun Kim v. United States,* 707 F.3d 335, 336-337 (D.C. Cir. 2013) (quoting *Stanton v. DC Court of Appeals,* 127 F.3d 72, 77 (D.C. Cir. 1997)). To dismiss the Complaint when the amendment so obviously remedies any deficiency would be completely antagonistic to the court's responsibilities under Rule 15(a)(2) that it "should freely give leave when justice so requires."

---

1 As stated previously, at the time of filing this Complaint this *pro se* Plaintiff's circumstances reasonably caused him to be cautious regarding making an overly prolix recital of his claims. Even the attached declaration is in no way complete regarding the extent of the Plaintiff's expenditures made over the last two years to sustain CPI while continuously impeded by the Defendants from making ordinary income for the corporation.

Defendant Floyd's present suggestion that the cause should now be dismissed with prejudice is simply bizarre. It is axiomatic that a dismissal with prejudice is an adjudication on the merits. In effect, Floyd asks in the same breath that this court find it has no jurisdiction over the cause and then exercise that jurisdiction over the cause in dismissing with prejudice. *Cox, Cox, Filo, Camel & Wilson, LLC v. Sasol North America, Inc.*, 544 Fed.Appx. 455 (5th Cir. 2013). There is no justifiable impediment to this case now proceeding to a complete adjudication on the merits.

CONCLUSION

For these reasons, and for such other reasons as the Court finds to be good and sufficient cause, this court should find proper subject matter jurisdiction under 18 U.S.C. § 1964(c), give leave for the Complaint to be amended, and the matter to proceed to discovery and trial without further undue delay.

Respectfully submitted this fifth day of November, 2025,

Matthew A. LeFande
PO Box 22
Midland VA 22728
540 346 3760
matthew.lefande@cpi-va.us
PLAINTIFF, *pro se*

## L.R. 83.1 (N)(2) CERTIFICATE

I declare under penalty of perjury that no attorney has prepared, or assisted in the preparation of this document.

_____
Matthew A. LeFande

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and complete copy of the foregoing Memorandum, Declaration and attendant documentation to the Defendants' respective counsel at the addresses below via United States Postal Service Priority Mail, postage prepaid and electronic delivery notification requested, this fifth day of November, 2025.

Stephen Lofaso
Vanderpool, Frostick & Nishanian PC
9200 Church Street Suite 400
Manassas VA 20110

Article Number: 9405 5361 0619 5280 4215 82


Sachin Kori
The Irving Law Firm PC
2311 Wilson Boulevard, 3rd Floor
Arlington VA 22201

Article Number: 9405 5361 0619 5280 4209 98

_____
Matthew LeFande